UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CENACA WILLIS,

                Petitioner,               Civil Action No. 2:10-cv-10096
                                        Honorable Lawrence P. Zatkoff

v.

CATHY BAUMAN,

                Respondent.

_____/

OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING
A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON
APPEAL IN FORMA PAUPERIS

        This matter is before the Court on Petitioner's pro se request for habeas relief pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree murder, MICH. COMP. LAWS § 750.316, and commission of a felony with a firearm. MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to life imprisonment for the murder conviction and a consecutive two years for the firearm offense. The case was initially stayed while Petitioner exhausted his state court remedies. The reinstated petition raises six claims: (1) Petitioner was denied the effective assistance of trial counsel for failure to call alibi witnesses; (2) the trial court erroneously allowed a defense witness to be impeached with prior convictions; (3) the prosecutor committed misconduct during closing argument; (4) defense counsel was ineffective for failing to properly advise Petitioner regarding his plea; (5) Petitioner was denied his right to a speedy trial; and (6) Petitioner was denied the effective assistance of appellate counsel. The Court will deny the petition because Petitioner's claims do not merit habeas relief. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed in forma pauperis on appeal.

**Background**

Petitioner's convictions stem from the January 6, 2005 shooting death of 19-year-old Zaheed Price. Price was shot twice in the head with a shotgun while sitting in the front seat of a car parked on a residential street in the City of Detroit.

Martez Lear testified that he and the victim were running "ATM scams" on the day of the shooting. After the two had tried to take money from some ATMs, they drove to Lear's aunt's house. Lear parked the car and went into the house to talk to his aunt, and Petitioner remained in the car. While Lear was inside, he heard two gunshots. Lear had not told anyone he was going to his aunt's house.

Two eyewitnesses identified Petitioner as the shooter to the police. But at trial, they recanted their statements. Devin Haygood testified that she lived in the neighborhood of the shooting and knew Petitioner. She heard the shots from inside her house. She looked outside of her window and saw someone dressed in all black and carrying a long gun running from the victim's car. Haygood admitted that she was afraid to testify. She testified that she did not recognize the shooter, but at the preliminary examination and in her statement to police, she stated that she saw Petitioner running with the gun after the shooting.

Donte Ruben testified that he is close with Petitioner's family, and he has known Petitioner since he was a child. He was sitting on his porch in view of the car when the shooting occurred. He testified that the shooter was taller than Petitioner. Ruben admitted, however, that he identified Petitioner as the shooter to the police. He claimed that he did so only because the police threatened him.

Another man, David Isho, testified at trial that he witnessed the shooting from down the

street. He described the shooter as being short, and skinny – a description consistent with Petitioner's appearance.

Police Officer Jerrod Willis testified that when he arrived at the scene of the shooting, the victim was seated in the front passenger seat with his head slumped back. He was obviously dead. Willis observed fired 20-gauge shotgun shells on the ground near the vehicle. Later in the evening homicide detectives arrived at the scene. Witnesses at the scene led them to another address on the street where Petitioner resided. After obtaining a search warrant, officers found an empty box for a 20-gauge shotgun and five shells. Petitioner was arrested when he returned home, several hours later. A gunshot residue test indicated suspected, but not confirmed, gunshot residue on Petitioner's hands.

Jamar Willis, Petitioner's uncle, testified that Petitioner knocked on his door on the evening of the incident, saying that he had just walked over from his mother's house. Petitioner asked for a ride home. Jamar drove Petitioner home. Police were at his house when they arrived.

Petitioner presented one witness in his defense. Jeremy May testified that he was working on his car on the evening in question when he heard gun shots. He looked up and saw a man running with what appeared to be long gun. He knows Petitioner, but did not recognize the man who was running with the gun. The man was much taller than Petitioner.

Based on this evidence that jury found Petitioner guilty of first-degree murder and commission of a felony with a firearm. He was subsequently sentenced to life plus two years imprisonment.

Petitioner filed a claim of appeal in the Michigan Court of Appeals and was appointed appellate counsel. Petitioner's counsel filed a motion for a new trial and a motion and for an

evidentiary hearing in the trial court. The trial court held an evidentiary hearing on the motion, and afterwards it ruled that Petitioner's counsel was not ineffective.

Petitioner then filed his brief on appeal with the Michigan Court of Appeals, raising the following claims:

> I. [Petitioner] was denied the effective assistance of counsel where counsel's decision not to present the alibi defense denied him of a substantial defense.
>
> II. The improper impeachment of [Petitioner's] only defense witness, Mr. May, was based in part upon ineffective assistance of counsel—and resulted in the denial of a fair trial.
>
> III. The prosecution's improper arguments and defense counsel's failure to object thereto, combined to deny [Petitioner] a fair and impartial trial.

The Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions. *People v. Willis*, No. 278073, 2008 WL 5197089, at *1 (Mich. Ct. App. Dec. 11, 2008).

Petitioner filed an application for leave to appeal with the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Willis*, 483 Mich. 980 (2009)(table).

Petitioner then filed his initial habeas petition with this Court. In June 2010, Petitioner moved to hold his habeas petition in abeyance so that he could file a motion for relief from judgment to exhaust additional issues. The Court granted Petitioner's motion and ordered the case stayed while Petitioner exhausted his new claims.

Petitioner then filed a motion for relief from judgment in the trial court, raising the following claims:

> I. [Petitioner's] Sixth Amendment right to counsel was violated by counsel's deficient performance in failing to provide [Petitioner] with competent advice

4

concerning a plea and failing to adequately investigate an alibi defense.

II. [Petitioner's] right to a speedy trial under the Sixth Amendment to the United States Constitution and Article 1, Section 20 of the Michigan Constitution were violated.

III. [Petitioner's] right, under the United States and Michigan Constitutions, to the effective assistance of trial and appellate counsel was violated.

The trial court issued an opinion and order denying Petitioner's motion. *People v. Willis*, No. 06-012922-01, Op. and Order Wayne County Cir. Ct. Oct. 7, 2010. The court found that no evidence supported Petitioner's claim regarding his plea because the record demonstrated that counsel reviewed the tapes of jail calls and that Petitioner and counsel knew of their content. Regarding Petitioner's other claims, the trial court concluded that Petitioner was not denied his right to a speedy trial. Based on those determinations, the trial court concluded that Petitioner was not denied the effective assistance of appellate counsel by counsel's failure to raise those issues on direct appeal.

Petitioner then sought leave to appeal from the Michigan Court of Appeals, but the Michigan Court of Appeals denied Petitioner's application based on Petitioner's failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Willis*, No. 302417 (Mich. Ct. App. Sept. 13, 2011). The Michigan Supreme Court denied Petitioner's application for leave to appeal by citing the same court rule. *People v. Willis*, 491 Mich. 852 (2012)(table).

## Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court
of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court
arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the
state court decides a case differently than the Supreme Court has on a set of materially
indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable
application" occurs when "a state court decision unreasonably applies the law of [the Supreme
Court] to the facts of a prisoner's case." *Id*. at 409.  A federal habeas court may not "issue the writ
simply because that court concludes in its independent judgment that the relevant state-court
decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court
decision must be consistent with the respect due state courts in our federal system." *Miller-El v.
Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for
evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the
doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*,
521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A]
state court's determination that a claim lacks merit precludes federal habeas relief so long as
'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.
Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The
Supreme Court has emphasized "that even a strong case for relief does not mean the state court's

6

contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories

supported or...could have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the

holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is

because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal

courts from relitigating claims that have previously been rejected in the state courts, it preserves the

authority for a federal court to grant habeas relief only "in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's

precedents. *Id*.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against

extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error

correction through appeal." *Id*. (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens,

J., concurring in judgment)).  Therefore, in order to obtain habeas relief in federal court, a state

prisoner is required to show that the state court's rejection of his claim "was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any

possibility for fairminded disagreement." *Id.*, at 786-787.

## Discussion

### A. Ineffective Assistance of Counsel (Claims I and II)

Petitioner's first claim asserts that his trial counsel was ineffective for failing to call alibi

witnesses in his defense. His second claim asserts that his trial counsel was ineffective for eliciting

from the sole defense witness that he had prior felony convictions. Both claims were reasonably

7

rejected on the merits by the Michigan Court of Appeals, and therefore they do not merit habeas relief.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

8

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*.

Petitioner first claims that his counsel was ineffective for failing to call additional alibi witnesses.  The record shows that defense counsel at least considered presenting the witnesses because he filed a notice of alibi that listed them. The prosecutor, however, delivered tape recordings to defense counsel prior to trial that contained phone conversations Petitioner had with these witnesses from jail. In the recordings, Petitioner asks the witnesses to remember that they were with him at the time of the shooting and to testify on his behalf.  The witnesses seemed to indicate either hesitation to testify that Petitioner was with them or to a lack of memory.

At the evidentiary hearing held in the state trial court, defense counsel testified that when he listened to the tapes he thought they were equivocal as to whether Petitioner was attempting to get the witnesses to testify falsely or whether he was trying to prod their memory. On balance, he decided to not produce the witnesses because he feared the jury might believe Petitioner was attempting to fabricate an alibi defense. The Michigan Court of Appeals found that counsel's decision not to call the witnesses in light of this record was "a classic matter of trial strategy which, under the circumstances, was not objectively unreasonable." *Willis*, Mich. Ct. App. No. 302417, *4.

9

This decision did not result in an objectively unreasonable application of the *Strickland* standard. Counsel was asked to make a strategic decision. On the one hand, counsel had the option of presenting alibi witnesses which also would have allowed the tapes to be played, and they may have been interpreted by the jury as indicating an effort to falsify a defense. On other hand, counsel could choose to forgo the witnesses and avoid the prosecutor presenting her interpretation of the tapes to the jury. Counsel's decision to not call the witnesses was an acceptable trial strategy under the extremely deferential *Strickland* standard. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)). The decision to avoid the presentation of evidence that might paint Petitioner as fabricating a defense cannot be deemed unreasonable, especially where by the time of trial the eyewitnesses were ready to recant their identification testimony. Accordingly, the state court reasonably rejected this claim on the merits.

Petitioner also argues that counsel was ineffective for eliciting from Jeremy May that he had been previously convicted of a felony. This claim was also reasonably rejected by the state courts.

Defense counsel called May to establish that he saw the perpetrator of the shooting, and that it was not Petitioner, whom May knew. At the beginning of his direct examination, counsel elicited from May that he had prior felony convictions. On cross-examination, the prosecutor then elicited that two or three of these convictions involved dishonesty. Defense counsel did nothing more than employ a common defense tactic. Trial counsel's decision to elicit the evidence that his witness had

10

a criminal history on direct examination was well within the ambit of reasonable trial strategy, a strategy generally taken "to soften the anticipated blow in the eyes of the jury." See *United States v. Williams*, 939 F.2d 721, 723-25 (9th Cir. 1991). The claim was reasonably rejected by the Michigan Court of Appeals[1].

Accordingly, Petitioner has not demonstrated entitlement to habeas relief with respect to either of his first two habeas claims.

**B. Prosecutorial Misconduct (Claim III)**

Petitioner's third claim asserts that the prosecutor committed misconduct during closing argument by making a burden-shifting argument. Specifically, Petitioner claims that the prosecutor improperly commented on the fact that Petitioner did not explain his presence at his uncle's house after the shooting, the possible gunshot residue on his hands, or his return to the scene of the shooting. Petitioner also asserts that the prosecutor improperly argued that David Isho testified truthfully.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*, ___ U.S. ___, 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that

---

[1]To the extent Petitioner argues that the witness was improperly impeached with his prior convictions, the claim is not cognizable on federal habeas review. See *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *Burks v. Egeler*, 512 F.2d 221, 223 (6th Cir. 1975).

11

*Donnelly/Darden* is the proper standard).

A prosecutor may not shift the burden of proof to the defendant, *Patterson v. New York*, 432 U.S. 197, 215 (1977), or "suggest that the defendant ha[s] the burden of proof or any obligation to produce evidence to prove his innocence." *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir. 2006) (quoting *United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir. 1993)). Nor may a prosecutor use a defendant's decision to remain silent as substantive evidence of guilt. *Hall v. Vasbinder*, 563 F.3d 222, 232 (6th Cir. 2009).

Although the prosecutor commented on the incriminating inferences that could be drawn from Petitioner's location on the night of the incident and the possible gunshot residue on his hand, the prosecutor did not suggest that Petitioner had the burden of proving his innocence by rebutting the inferences. The prosecutor did not argued that *Petitioner* did not provide a innocent explanation for his conduct; she argued that there *was no* innocent explanation. There was no suggestion made that Petitioner was required to present any evidence in his own defense or disprove his guilt.

Even if the comment unfairly suggested to the jury that Petitioner was required to present evidence, any unfair prejudice was ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. See *Hamblin v. Mitchell*, 354 F. 3d 482, 495 (6th Cir. 2003). Jurors are presumed to follow the court's instructions. See *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").

Petitioner's argument that the prosecutor unfairly stated that Isho's testimony was truthful is also without merit. A prosecutor may not express a personal opinion concerning the credibility

12

of trial witnesses, because vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted); *see also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 n. 43 (6th Cir. 1998). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003)(prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would

13

give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie).

Here, the prosecutor's argument regarding Isho was based on the fact that he described the shooter without naming him and had no apparent motivation to fabricate his testimony. The prosecutor did not suggest that she had any special knowledge of the witness's veracity.

Petitioner has therefore not shown that the prosecutor's argument rendered his trial fundamentally unfair, and the claim is therefore without merit.

## C. State Post-Conviction Review Claims (Claims IV, V, and VI)

Petitioner's last three claims were first presented to the state courts in his motion for relief from judgment in the trial court. The trial court denied relief, finding that Petitioner had failed to demonstrate "good cause" for failing to have raised the claims on direct appeal. The Michigan Court of Appeals denied relief under Rule 6.508(D). As a result, Respondent asserts that review of these claims is barred by Petitioner's procedural default of failing to raise these claims on direct appeal.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

14

With respect to Petitioner's failure to present his claims to the state courts on direct appeal, Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

The Michigan Court of Appeals rejected Petitioner's post-conviction appeal on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." This order, however, did not refer to subsection (D)(3) nor did it mention Petitioner's failure to raise these claims on his direct appeal as the rationale for rejecting his post-conviction claims. Because the form order in this case citing Rule 6.508(D) is ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the order is unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id*.

As stated, the trial court rejected petitioner's motion for relief from judgment, finding that Petitioner had not demonstrated "good cause" for failing to raise this claim during his direct appeal. Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's post-conviction claims are thus clearly procedurally defaulted under this rule. *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

Petitioner cannot establish cause to excuse his default. Petitioner alleges ineffective assistance of appellate counsel as the reason these claims were not raised earlier. Petitioner,

however, has not shown that appellate counsel was ineffective. It is well-established that a criminal

defendant does not have a constitutional right to have appellate counsel raise every non-frivolous

issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court

has explained:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every 'colorable' claim suggested by a client would
> disserve the ... goal of vigorous and effective advocacy.... Nothing in the
> Constitution or our interpretation of that document requires such a standard.

*Id*. at 463 U.S. at 754.

"[A] brief that raises every colorable issue runs the risk of burying good arguments-those

that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made

up of strong and weak contentions." *Id*. at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a Strickland claim based on
> [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult
> to demonstrate that counsel was incompetent.

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left

to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.

1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out

weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477

U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly

stronger than those presented will the presumption of effective assistance of appellate counsel be

overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver

deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined

16

as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a substantial appellate brief which raised three claims. Petitioner still maintains that those claims have merit. Petitioner has not shown that appellate counsel's strategy in presenting some claims and not raising other claims was deficient or unreasonable. Petitioner has therefore failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

Because Petitioner has failed to show cause to excuse his default, it is unnecessary to reach the prejudice issue regarding his defaulted claim. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has not presented any new reliable evidence that he is innocent of the crimes; as such, a miscarriage of justice will not

occur if the Court declined to review petitioner's post-conviction claims on the merits.

Accordingly, Petitioner's fourth, fifth, and sixth claims do not merit habeas relief.

### Certificate of Appealability

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

**Conclusion**

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.  It is further ORDERED that a certificate of appealability is DENIED.  It is further ORDERED that permission to proceed in forma pauperis on appeal is DENIED.

S/Lawrence P. Zatkoff
Lawrence P. Zatkoff
United States District Judge

Dated:  November 13, 2013